[Civ. No. 2992. Second Appellate District, Division One.—December 30, 1920.]

JULIA A. PARISH, Appellant, v. W. B. STUDEBAKER et al., Respondents.

[1] LANDLORD AND TENANT—RECOVERY OF POSSESSION—DAMAGES FROM SALE OF STOCK AND RETIREMENT FROM BUSINESS—EVIDENCE—REVERSAL OF JUDGMENT.—In an action by a lessor to secure judgment of ejectment against the lessee and to recover rents and damages for the alleged withholding of the demised premises, it is reversible error to award the defendant judgment on his affirmative pleadings for damages suffered from a sale of his stock of merchandise and compelled retirement from the premises due to plaintiff's interference, where it is found that said sale and removal was made after a date when defendant was no longer lawfully in the possession of the premises because of his default in the payment of rent.

[2] ID.—TRESPASS OF LESSOR—WRONGFUL INTERFERENCE WITH POSSESSION OF LESSEE—PLEADING—COUNTERCLAIM.—In such an action a trespass alleged to have been committed by the lessor in wrongfully interfering with the possession of the lessee may be set up by way of counterclaim as being a cause of action connected with the transaction alleged by the plaintiff.

[3] ID.—DEPOSIT COVERING RENTALS AT END OF TERM—ALLOWANCE TO LESSEE.—In such an action the defendant is entitled to have allowed as against the demand for rent his counterclaim for the money deposited to cover the rental for the last two months of the term, notwithstanding the provision of forfeiture, where the plaintiff's damage is capable of calculation with reasonable definiteness.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Reversed.

The facts are stated in the opinion of the court.

Henry E. Carter, J. A. Adair and Henry O. Wackerbarth for Appellant.

Warden D. Isenberg and W. A. Martin for Respondents.

JAMES, J.—Plaintiff brought this action to secure judgment of ejectment against the defendants; to recover certain specified rents, and to recover damages for the alleged

unlawful withholding of the real property. The court made findings awarding plaintiff a money judgment, declined to make a judgment for the possession of the premises because at the time of the trial it appeared that such possession had been surrendered to the plaintiff, and, further, upon a cross-complaint and supplemental cross-complaint, allowed judgment to the defendants for a sum in excess of that demanded by the plaintiff. It is from this judgment upon the alleged cross-complaint, and from an order denying the plaintiff's motion to vacate the judgment and enter a different judgment on the findings, that the appeal is taken.

The plaintiff, prior to the commencement of her action, had leased to defendant Studebaker one-half of a storeroom on a business street in the city of Los Angeles. The rental agreed to be paid under the written lease was the sum of $800 per month. The rental which became due on the 1st of July, 1917, for that month was not paid, and on July 13th plaintiff demanded payment thereof and gave notice to the defendants that unless such payment was made by July 16th she would exercise her option to terminate the lease without further notice. The rental was not paid, and the court finds that the defendants "thereby forfeited all right, title and interest in and to said premises, and every part thereof, under said lease, and plaintiff was entitled to re-enter and possess the same, and on the seventeenth day of July, 1917, plaintiff exercised her option to terminate such lease and did terminate the same, . . . and then and there demanded possession of said premises thereunder, but defendants did not surrender or quit the possession of said premises thereunder, but continued to hold, use and occupy the same until September 8, 1917." The complaint in this action was filed on July 19, 1917. The court further determined that there was due to the plaintiff as rent and as the reasonable value of the use and occupation of the premises from the first day of July to the eighth day of September, 1917, the sum of $1,813.35; that the reasonable value of the use of the premises from July 17 to September 8, 1917, was the sum of $800 per month. As to the correctness of the calculation, no question is made by the plaintiff. It may be here mentioned that defendant Studebaker and the

Studebaker Quality Shop, a corporation, were one and the same, so far as the real ownership of the business conducted by Studebaker is concerned. The defendant Studebaker Quality Shop was owned by W. B. Studebaker and the corporation was organized only for the purpose of business convenience. The court so found the fact to be. Defendant filed, in addition to an answer containing denials of the issues proposed by the complaint, a statement of an alleged counterclaim, which was made up of two things: First, an alleged cause of action to recover a $1,600 deposit made to cover the rental for the last two months of the lease term; second, an alleged cause of action for damages of interference with the possession of the premises occupied by the defendant. In the form of a cross-complaint, all these matters were reasserted, and a large amount of damages was prayed for against the plaintiff. This cross-complaint was filed on the third day of August, 1917. It will already have been noted that, according to the findings of the court, the defendants were at that time in possession of the premises, unlawfully so, and that they continued in such unlawful possession up to the eighth day of September, 1917. On September 14th, the cause came on for trial. Whereupon the defendants offered, and the court allowed to be filed, an alleged supplemental cross-complaint, wherein it was asserted that by reason of the acts complained of in the counterclaim and cross-complaint first filed, and continuance thereof after the filing of the cross-complaint, defendants had been compelled to retire from business and had been compelled to sell (on September 8, 1917) their merchandise at a loss of twenty-five per cent, which loss was asserted to be in total the sum of $2,500. The court in its findings determined the issues in favor of the defendants on the supplemental cross-complaint and determined that defendants had been compelled to sell their merchandise and that it had been sold to Margaret Studebaker, wife of defendant Studebaker, and that the stock of merchandise was of the value of $8,500 and the price for which it was sold to Studebaker's wife was $7,500. The court then calculated the total loss as arising under all of the allegations in the affirmative pleadings of the defendant as being the sum of $1,300. At the time the supplemental cross-complaint

was filed, plaintiff objected, on the ground that it did not constitute proper subject matter for a cross-complaint.

[1] The findings are not sufficient to support the judgment as to the cause of action set up in the supplemental cross-complaint. While the findings as made by the court are, in part, conflicting and uncertain, it is quite clear that in making up the computation of the amount of $1,300 damages which the court found had been suffered by defendant, $1,000 was included as being the loss suffered by the sale of the merchandise from the defendant Studebaker to his wife. The court had already found that the defendants were not lawfully possessed of the premises after July 17, 1917, and their occupancy thereafter, under that finding, was wholly without right, and it could not be said that any acts committed by the plaintiff after said 17th of July furnished legal basis for a claim that on the eighth day of September defendants were compelled to sell the merchandise at a loss and move from the premises. Had they obeyed the requirement of the law, they would have moved on the 17th of July. It is also uncertain as to whether the court intended to apportion the $300 of the $1,300 found as damages on account of the acts set forth in the original counterclaim and cross-complaint, they being acts wherein the plaintiff molested and annoyed the defendants in the conduct of their business. For that reason alone the judgment would necessarily have to be reversed. There are other questions, however, to be decided.

Appellant asserts that in this action of ejectment no recovery could be had under the allegations of the counterclaim and cross-complaint because of alleged acts of the defendants, for the reason that no damages could be recovered unless an eviction, actual or constructive, had been worked against the tenant of appellant; in other words, that unless the acts complained of had caused the defendants to leave the premises, there would be no constructive eviction, and admittedly there was no actual eviction. This rule relating to damages for eviction is undoubtedly the correct one. Counsel have cited many cases affirming the same, among them *Kinney* v. *Libboy,* 54 Misc. Rep. 595, [104 N. Y. Supp. 863]. And it is further asserted by appellant that, under the facts stated, what-

ever interference was made by the plaintiff with the possession of the defendants it amounted to a trespass merely and was as though it had been committed by a stranger to the lease. This general proposition appears, also, to be sound and to be supported by the authorities. The action here was, in part, for tort and, in part, upon contract. Section 438 of the Code of Civil Procedure, relating to counterclaims, provides that a counterclaim may be made of: "1. A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action; 2. In an action arising upon contract; any other cause of action arising also upon contract and existing at the commencement of the action." The trespass found to have been committed by the plaintiff against the defendants was, of course, a tort, but we think that it was such a tort as would be connected with the subject of the action, as defined in subdivision 11 of the section quoted. It must be admitted that separate torts cannot be set up in complaint and counterclaim. (*Wigmore* v. *Buell*, 116 Cal. 94, [47 Pac. 927].) The court has never decided, however, that torts may not be set up one against the other, so long as they fall within the code classification as being connected with the subject of the action or arising out of the transaction set forth in the complaint. (*Van Bibber* v. *Hilton*, 84 Cal. 585, at p. 589, [24 Pac. 310], opinion denying rehearing.) Were the action to recover possession of the property only, the authorities cited to the effect that there could be no counterclaim or cross-complaint for damages for tort would be directly in point, as *Yorba* v. *Ward*, 109 Cal. 107, [38 Pac. 48, 41 Pac. 793], where it is said: "The only transaction there set out [in the complaint]— if it could be so denominated—is that defendant withholds from plaintiff the demanded premises, claiming some title to it. The cross-complaint does not show any right or title to the demanded premises in defendant. By it defendant asserts no rights with reference to the land, nor any claim save his alleged right to demand from plaintiff four thousand six hundred and fifty dollars. This demand is not connected with the 'subject of the action,' however that phrase be defined." In that case the demand was upon a count entirely distinct and in nowise connected with

the subject matter of the action. [2] Here a claim for damages was made for a tortious withholding of the property, and we are of the opinion that the trespass alleged to have been committed by the plaintiff may be properly set up in favor of the defendants by counterclaim as being a cause of action connected with the transaction alleged by the plaintiff.

[3] Up to this point we have not referred to the further claim which was allowed to the defendants for the sum of $1,600, with ninety-six dollars interest. This claim, we think, was properly allowed as an offset. The court found that on the twenty-seventh day of December, 1913, the lessee delivered to the plaintiff the sum of $1,600, which was delivered under a written agreement which recited that the lessee had paid to the lessor $1,600 as payment of rents for the months of December, 1918, and January, 1919, for the premises leased, and that the $1,600 so advanced was to bear interest at the rate of six per cent per annum. The agreement, which was set forth in the findings, further provided that in the event the lease was terminated or forfeited by Studebaker, or his successors, the money should become the property of plaintiff without affecting her right to damages which she might be entitled to. Clearly, this money was to be applied on the last two months of the lease term as payment for the use of the premises, and the forfeiture provision could only be made applicable by a showing that any damages which the plaintiff had suffered could not with reasonable definiteness be calculated. Such payments have become common to lease contracts. The record shows no ground for inferring that plaintiff's damage by reason of the forfeiture of the lease could not be calculated, or that by the judgment herein her damages were not fairly ascertained and awarded to her. In conditions of the kind involved in the agreement last referred to, when a forfeiture is declared, the lease contract becomes at an end and the right of the tenant to further possession of the premises is lost. Such being the case, the situation would be that a lessee must either have forfeited the amount paid for the last two months of the term or be entitled to recover it. That such a recovery, under circumstances which this case illustrates, should be allowed, is held in *Rez* v. *Summers,* 34 Cal. App.

527, [168 Pac. 156]. And so we think that the counter-claim for the $1,600 and interest, as against the demand for rent, was properly allowed.

Another complaint made by appellant is that the court should have allowed attorney's fees to her. The lease agreement contained the following condition: "It is further agreed that in the event said party of the first part shall commence any action to enforce any of the provisions of this lease, or any of its rights hereunder, that in any judgment recovered by it a reasonable attorney's fee shall be included." The lease agreement further provided that if the rental payments were not made within ten days after the first of the month, the party of the first part should have the right to declare the lease terminated with-out notice. By this action plaintiff did seek to enforce rights which the lease contract gave her. The complaint properly alleged that plaintiff had incurred a charge on account of attorney's fees and such allowance should have been made, assuming that evidence was offered to sustain that claim.

From the conclusions announced it follows that the judgment should be reversed.

The judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 26, 1921.